THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ANRION CORP.<br>(a Florida corporation);<br><br>ANDREI MANN<br>(resident of New York State)<br><br>   Plaintiffs<br><br>    v.<br><br>TATIANA IVANOVA<br>(resident of Massachusetts);<br><br>NATHALIE ROICOMTE-CAVALLARI<br>(French national, resident of Monaco);<br><br>SCI MANIV<br>(a company registered in France)<br><br>   Defendants | ACTION No.<br><br>**VERIFIED COMPLAINT**<br><br>**FOR DAMAGES, DECLARATORY AND INJUNCTIVE RELIEF, COUNTS:**<br>**I.  Fraud.**<br>**II. Fraudulent concealment.**<br>**III. Money had and received.**<br>**IV.  Unjust enrichment.**<br>**V.  Breach of fiduciary duties.**<br>**VI. Breach of contract.**<br>**VII. Conversion.**<br>**VIII.  Account stated.**<br>**IX.  Declaratory judgment.**<br>**X. Civil conspiracy.**<br>**XI.  Injunctive relief.**<br>**XII.  Accounting.**<br>**XIII. Promissory estoppel.** |

**NATURE OF ACTION.**

  A Florida corporation and a resident of New York State bring this action as a corporate assignee and the assignor, asserting the rights arising from the 50% stake in a foreign company. Plaintiffs state the claims against a resident of Massachusetts, the holder of the other 50% stake in that company.  That company,  registered in France in 1996, has owned two apartments for investment and two beneficial owners' occasional use in Saint-Raphaël, located in the Southern region of France.  The first defendant illegally sold those apartments on information and belief, fabricating the individual plaintiff's consent and signature.  While raiding the company's assets, that defendant unlawfully directed the sales proceeds to her personal account in the U.S.  That defendant, residing in Boston, obtained over $1 million for one apartment on her personal account.

Without due disclosure, the first defendant also unlawfully sold in 2022 the second apartment for about $1.2 million, directing to wire transfer proceeds, again, to her personal account, but that amount, on information and belief, has not yet reached her account.  Plaintiffs state other causes of action and name two more defendants.  Among other claims, Plaintiffs seek injunctive relief concerning the $1.2 million sale proceeds in the banking system and an Order for accounting.

## PARTIES

1.      Plaintiff Anrion Corp. (hereinafter "Anrion"), State of incorporation Florida, is an assignee of the rights of Andrei Mann for damages asserted in this action.  Anrion's registered agent is at the address: c/o Sunshine Corporate Filings LLC, 7901 4th Street N, Suite 300, St. Petersburg, FL 33702.  Anrion's president, director, secretary, and treasurer is Andrei Mann, a resident of the State of New York.  Mann is the assignor of his rights for damages, as described below, to that corporation.

2.      Plaintiff Andrei Mann (hereinafter "Mann") is an individual residing in the State of New York at 8855 Bay Parkway, Apt 7J, Brooklyn, NY 11214.  Mann is the 50% owner of SCI Maniv, registered with Tatiana Ivanova in France. Mann is the assignor of the claims for damages and may be joined as a party in this case.  Additionally, some of Mann's claims in this action have not been assigned to Anrion or may not be assignable as a matter of law.

3.      Defendant Tatiana Ivanova (hereinafter "Ivanova") is a resident of the Commonwealth of Massachusetts.  Public records show her two addresses in the Boston area: 537 Boylston St., Brookline, MA 02445, and 126 Marlborough St., Boston, MA 02116.  Ivanova is a defendant in this action because, on information and belief, as a co-owner of SCI Maniv (50/50), she caused to manufacture Mann's consent or his signature on the Purchase and Sales Agreements for the sale of both apartments in France owned in the name of Maniv.  Concealing from Mann

2

her intentions and acts, Ivanova, as it turned out, was acting, out of Massachusetts, to unlawfully obtain all of Maniv's for herself without informing Mann.

4.      Defendant Nathalie Roicomte-Cavallari (hereinafter "Cavallari") is a resident of Monaco and, on information and belief, a citizen of France.  Cavallari's office address is Concilium, Villa Bianca, 29 rue du Portier, 98000, Monaco.  Cavallari is a private notary providing her services out of Monaco.  Among other services, Cavallari provides assets management as a founder of Wealth Planning SAM Multi-Family Office et Concilium Legal & Tax.  Cavallari is de facto Ivanova's associate, who apparently consented to accommodate Ivanova's unilateral unlawful instructions to raid Maniv's assets without notifying Mann and overcoming the obligations of fiduciary duties and good faith.

5.      Defendant SCI Maniv is a holding company, that Mann and Ivanova registered under the laws of France in June of 1996, at the address:  Promenade Des Bains, Promenade de Lattre Tassigny, 83700, Saint Raphaël, France.  The company's name "Maniv" stemmed from the abbreviation and joinder in one word of two last names: Mann and Ivanova.  Maniv was a title holder for two apartments.  Mann and Ivanova had had the 50/50 stake in Maniv, owning two apartments at Promenade René Coty, 83700 Saint-Raphaël.  Maniv is a nominal defendant in this action as a title holder of two apartments in France.  No relief in this action will be complete without that company being a nominal co-defendant.

## JURISDICTION.

6.      Jurisdiction for this action is proper under the diversity of citizenship.  Plaintiff Anrion is a Florida corporation.  Mann is a resident of the State of New York.  Defendants Ivanova is a resident of Massachusetts, Cavallari is a resident of France, and Maniv is a company registered

in France.  The diversity of citizenship applies here, where the claims exceed the statutory minimum of $75,000, pursuant to 28 USC §1332.

## FACTS

7.      Mann got acquainted with Ivanova in the mid-1980s.  Both worked then as journalists at a newspaper called the 'Medical Newspaper,' published in Moscow, Russia.

8.      In 1989 Mann became the founder and Chief Executive Officer of S-Info, a new independent news and publishing agency based in Russia.  Among several other people, Ivanova joined S-Info and participated in that publishing enterprise, with varying involvement, because since 1997, Ivanova has lived primarily in Boston, Massachusetts.  Mann and Ivanova were associated with S-Info until 2018.

9.      Ivanova, who generated substantial income from S-Info and other enterprises that Mann created as an entrepreneur, invested in several of Mann's business projects.  Even though personal and business accounts were sometimes used interchangeably, Mann's projects in which Ivanova invested were business-related.  Ivanova's investments typically did not create Mann's personal liability before Ivanova but were to be repaid from business revenues.

10.      In 1996, Ivanova invited Mann to consider investing in realty in France.  Ivanova arranged for a joint trip to Southern France, where she showed Mann several business opportunities for acquiring realty, as investment, and for occasional use.

11.      On June 14, 1996, Mann and Ivanova incorporated in France a jointly owned (50/50) company SCI Maniv, at the address: Promenade Des Bains, Prom. de Lattre Tassigny, 83700, Saint Raphaël, France.  As mentioned above, the company's name represented the joinder of their abbreviated last names.

4

12.     Maniv's Articles of Association, registered on June 14, 1996, expressly stated and proved Mann's 50% stake in Maniv, in which Ivanova had the same 50% stake.  Maniv's Articles of Association are in the public domain.

13.     Ivanova and Mann selected the realty to acquire in the name of Maniv, namely two apartments situated at Promenade René Coty, 83700 Saint-Raphaël, located in Alpes-Côte d'Azur, a Southern Region of France.

14.     Mann and Ivanova wire transferred equal amounts from their accounts to fund Maniv toward acquiring two apartments, approximately $1.5 million.

15.     The purchased apartment unit B052 came with the designated garage space #17, and apartment unit B031/32, with garage space #16.

16.     Mann and Ivanova informally designated, between them, both apartments and used them, respectively, for periodic vacations.  Ivanova obtained for her family's use apartment B052, and Mann obtained for his family's use apartment B031/32, with the respective garage spots #17 and #16.

17.     Upon that designation, Mann started to buy furniture, equipment, kitchenware, and utensils for apartment B031/32, earmarked for his use.  A total of the purchases for the apartment's interior that Mann acquired in the course of over 20 years exceeded $35,000.

18.     In 1997, Ivanova moved to Boston and thereupon maintained limited contacts with S-Info and other business projects associated with Mann.

19.     While Ivanova was raising two children in Boston, she repeatedly approached Mann and his family, asking for financial assistance.  Mann and his family did provide Ivanova such financial assistance, over several years, for a total of approximately $1,173,000.

20.     More specifically, the loans to Ivanova amounted $20,000 in 2010; $213,000 in 2011; $277,400 in 2012; $147,000 in 2013; $200,453 in 2015; $301,018 in 2016; and $13,325 in 2017.  Ivanova has become liable to Mann for that financial contribution by Mann and his family.

21.     Mann's loans to Ivanova were calculated by an accounting firm RKF PC, at 300 Crown Colony Drive, Suite 400, Quincy, MA 02169.  That firm, particularly CPA Rosemary Chelio (Chelio), prepared tax returns for Mann's and Ivanova's respective families.  Interest was to apply for those loans to support Ivanova and her family.

22.     For example, the loans by Mann to Ivanova were later reflected in the legal opinion of a law firm, Greif & Litwak, P.C.  It discussed a proposed loan of $500,000 to Ivanova, as she requested, explaining the applicable interest and compliance with the Internal Revenue Code.  Subsequently, that law firm overcame conflict of interest and represented only Ivanova acting against Mann's interests.

23.     In June 2001, Mann founded, as an investor, a company in Massachusetts, Amazon Construction LLC ("Amazon"), at 1330 Center St., Newton, MA 02459.  Mann was the sole investor and owner of that company, with two initial managers.

24.     In December 2004, Ivanova joined that company, Amazon, as a registered agent, later replacing one of its two initial managers.  As a manager, Ivanova gradually started to control Amazon's bank accounts.

25.     As an entrepreneur, Mann has been active in several businesses and enterprises. One of those was a hotel in Slovakia that Mann acquired in approximately 2005.  Mann's company, registered in the U.S., owned that hotel.   Mann acquired that hotel from his own funds.  Ivanova was a manager of that hotel, acting primarily from Massachusetts in a remote mode.  Subsequently, Mann sold that hotel.

26.     Furthermore, for more than ten years, since 2004, Mann provided Ivanova, per her request, an additional income as a purported salary for managing the hotel in Slovakia and certain other business projects.  Ivanova had no employment agreement with Amazon.  However, Ivanova claimed executive compensation of $240,000 for most of those years through 2018.

27.     Ivanova used her position as being in control of Amazon's and several other associated business accounts and used Mann's frequent trips.

28.     Ivanova's management of the hotel in Slovakia was questionable from the very start because Ivanova stayed most of the time in Boston and was consequently unavailable in Slovakia.

29.      When Ivanova arranged to pay such a purported executive compensation to her personal accounts, approximately $240,000 a year, that was in error, the amount inflated or baseless.  In the opinion of the CPA Chelio, Ivanova's claim for compensation was overstated.  Given Amazon's lack of assets and overstated claims of Ivanova, Chelio suggested that Ivanova's compensation should be originated from Mann's personal accounts.

30.     In reality, given her education only in the Soviet Union and lack of managerial experience in either the USSR or the U.S., Ivanova did not qualify for such a high executive compensation.  In particular, Ivanova had no education in the U.S., instead having a background in Russia as a writing journalist and an editor.

31.     On information and belief, Ivanova had never been hired as a manager by any entity other than Mann's Amazon.  Ivanova's informal occupation at Amazon was defective, lacking any employment agreement with Amazon or Mann.  Ivanova's overstatement of compensation paid to her was in error that should be corrected in quantum meruit, among other claims herewith.

32.     Specifically, Ivanova was purportedly hired by Mann's company, Amazon, but only informally.  Amazon was a startup funded by Mann with no business revenues.  Mann paid

Ivanova's compensation or income from his personal funds.  In equity, those payments that Ivanova named her salary were excessive.  Those payments should be considered another form of subsidy, for which excessive compensation Ivanova should be liable to return at least half.

33.     In retrospect, Mann's subsidies and de facto loans which Ivanova categorized as executive compensation, were erroneous, favoring Ivanova without basis.  Executive compensation or subsidies to Ivanova to support her expenses and lifestyle should be equitably recalculated in quantum meruit, overpaid by at least a factor of two.

34.     In sum, Ivanova was overpaid by, at a minimum,f $120,000 a year for about 13 years till 2018, when Mann stopped subsidizing Amazon from his personal funds.  Ivanova's overpayment of compensation exceeded, on information and belief, $3 million, which should be termed as requiring repayment to Mann.

35.     As mentioned above, one of Mann's business projects with Ivanova was Maniv, a holding company they registered in France in June 1996.

36.     The Articles of Association of Maniv provided 50/50 stakes in the company between both members, Mann and Ivanova.  Each of the two had veto power for any business transactions disposing of the company's assets.  As applicable to the realty, neither Mann nor Ivanova had a right to sell the realty owned by Maniv.  Such purchase and sale transactions would have required the consent of both 50/50 owners of Maniv and Mann's signatures.

37.     Since 1996, Mann provided numerous payments to Maniv's local managers in France and various needs to maintain the properties.  On her end, to the best of Mann's knowledge, Ivanova did not make payments for Maniv's needs or, alternatively, did not report those to Mann.  The total payments to maintain Maniv, over 25 years, made by Mann exceeded €400,000 (Euros).

38.     Mann is unaware of payments by Ivanova for any of Maniv's needs.  If Ivanova made such contributions, she failed to report those to Mann.

39.     Ivanova's acts in June of 2019, selling unit B052, amounted to raiding the company's assets in violation of Mann's lawful rights as the 50/50 stakeholder in the company, Maniv.  Ivanova did so without disclosure to Mann.

40.     At certain other times, Ivanova also invested in Mann's business projects.  On May 23, 2018, Mann purportedly signed a promissory note to Ivanova for $2.3 million, a text prepared by Ivanova's attorney, who supposedly acted as neutral but actually represented Ivanova's interests.  Mann was taken by surprise without the benefit of his independent attorney.

41.     Mann has numerous challenges to that document that he has no recollection of signing. On its face, the purported promissory note was acknowledged by a notary public in Massachusetts a date a month earlier, April 23, 2018.

42.     That instrument was also prima facie invalid or illegal because Man was not in Massachusetts at either of those dates.  Mann's passport shows that on April 23, 2018, Mann was in Russia (Moscow), and on May 23, 2018, in Italy (Naples).  Mann's passport's border entry stamps are corroborated by other evidence that Mann was overseas on both dates, not in Massachusetts.

43.     Mann further did not participate in preparing that text and over-relied on Ivanova without proper accounting or auditing of mutual payments and liabilities.

44.     Mann did borrow certain funds from Ivanova, but the amounts stated by Ivanova on the purported promissory note were incorrect. Those did not reflect Mann's payments to Ivanova, including subsidies to her.  That purported promissory note was invalid from the formal

standpoint of illegality because it was dated by the notary public in Massachusetts, acknowledging the promissory note transaction on April 23, 2018, and it said Mann signed it a month later.

45.     Furthermore, a month difference within the four corners of the documents rendered that purported instrument invalid, violating the law of Massachusetts.   Reference is made to Mass. Gen. Laws Chapter 222, e.g., Sections 16, 20, and 22.

46.     Mann is unaware of what procedure Ivanova used for generating and handling that document.   Upon information and belief, the notary's acknowledgment may have been entered first in the document, which may explain the discrepancy of one month on the document.   Mann is unaware if that document's execution was entered in the notary's books or not.   As mentioned above, Mann was overseas on both of those dates.

47.     Substantively, that promissory note was, in part, erroneous and defective as to the numbers.   Ivanova's investments were made mainly in Mann's business projects in which Ivanova often had a stake, not for Mann's personal benefit.   Accordingly, those obligations, to a large degree, should be treated as before the business entities to which Ivanova contributed capital, not creating personal liability for Mann.

48.     As to the purported delegation of a right to use Maniv's assets as collateral, the purported promissory note required a follow-up execution of a power of attorney for France, which never took place.   Furthermore, the purported promissory note did not identify Maniv's assets, unit B052, in Ivanova's use.   Among other things, the purported instrument mentioned garage spot #16 but silenced #17, associated with Ivanova, also owned by Maniv.

49.     Mann and Ivanova continued to be in contact through December of 2019.   Thereby, Ivanova never proposed to Mann to sell the property owned by Maniv in France, did not ask for permission to sell Maniv's apartments, or to sign any documents.

50.     Ivanova intentionally concealed from Mann that in 2019 she was actually selling one of Maniv's apartments, namely apartment B052, and one garage spot, #17, associated with it. Ivanova failed to disclose that material information to Mann.

51.     On or about June 19, 2019, Ivanova, in fact, sold one of the two apartments owned by Maniv without asking Mann's consent or his signature on the contract, who discovered that fact by mere chance in July of 2022.

52.     While confronted with these ensuing questions over the phone in June of 2022, Ivanova apparently admitted to Mann that she had signed for Mann the purchase and sale agreement, selling that apartment for over $1 million.  If that oral admission becomes confirmed, it follows that Ivanova engaged in a forgery, somehow imitating Mann's signature on the purchase and sale agreement, without Mann's knowledge or consent.

53.     In an unspeakable fraudulent scheme, Ivanova, as she admitted in July of 2022, directed the sales proceeds to her personal account, instead of an account of Maniv, all without Mann's knowledge.

54.     Expressly, Ivanova never asked Mann to sign any purchase and sales agreement concerning the realty assets of Maniv, and Mann was completely unaware of one apartment's sale, unit B052, or of Ivanova's acts.

55.     Ivanova's unilaterally selling the apartment, held by SCI Maniv and beneficially co-owned by Mann, was undertaken in violation of Mann's rights, presumptively illegally under the laws of Massachusetts and/or federal laws of the United States.  Ivanova's acts in or about July of 2022, when Ivanova sold Maniv's assets for $1.2 million, amounted to raiding the company's assets.

56.     Ivanova relied on her associate, Cavallari, on information and belief, a French national, who was a notary with an office in Monaco, providing wealth management services to foreigners.   Cavallari was in charge of Maniv's affairs.   On information and belief, Cavallari facilitated the sale by Ivanova of that apartment, entering an unlawful agreement to defraud Mann.

57.     Cavallari was aware of Maniv's Articles of Association.  Cavallari was aware that Mann, a 50/50 stakeholder, had the veto power for such a sale.  Cavallari knew that any purchase and sale agreement to dispose of that apartment required Mann's consent and his authentic signature in the original set, acknowledged by a notary.

58.     On information and belief, Cavallari acted in contravention of her fiduciary obligation before Maniv's co-owner and of the regulations, where the signatures of both beneficial owners were mandatory.

59.     On information and belief, Cavallari also knew that the sales proceeds were unlawfully routed to Ivanova's personal account, in violation of Mann's rights, instead of her duty to secure the legality and prevent, as a notary, fraud.

60.     Per Mann's directive, on July 22, 2022, his attorney wrote to Cavallari, asking to disclose information on that sale.  Cavallari has not responded to that inquiry.

61.     On July 22, 2022, Mann's attorney also wrote to Louisa Serandi (Serandi), a real estate specialist at Squarehabitat Provence Cote D'Azur, 87 Avenue Henri Vadon, 83700, Saint-Raphaël.  Serandi had provided limited management services to Maniv regarding the apartments.

62.     On August 4, 2022, Serandi responded in writing that, to her knowledge, both apartments had been sold.  Serandi also wrote that she had stopped providing managerial services concerning Maniv for years.

63.     On August 4, 2022, Mann confronted Ivanova over the phone with questions about the second apartment, which, as it turned out, was also sold.  Ivanova admitted that she had recently sold Unit B031/32, which Mann used, for about $1.2 million, in the same manner as the first apartment.

64.     In that conversation, Ivanova admitted that she had routed the proceeds for the second apartment, again, to her personal account, but the money for that apartment had not yet been received.  Having promised to provide documents, Ivanova provided to Mann no documents to date, as it turned out, merely playing for time.

65.     On the same day, Mann directed his attorney to send the letter to Ivanova and Cavallari, asserting his rights as a 50/50 co-owner of Maniv.  Mann proposed an out-of-court settlement.  In partial compensation for Ivanova's unilaterally obtaining all proceeds for the sale of the first apartment, Mann demanded that Ivanova direct the sale proceeds for the second apartment, unit B031/32, to Mann's personal account or a trust account of his attorney at Bank of America.

66.     On August 5, 2022, Ivanova responded to Mann, through her attorney, with a refusal to amicably settle out of court, thus forcing this case to be filed.

### COUNT I.  FRAUD.

**(All Plaintiffs against all Defendants)**

67.     Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

68.     The alleged facts show that (1) Ivanova knowingly and repeatedly made false representations, endorsed by Cavallari, before the buyers of the realty coupled with misrepresentations to, and concealment from, Mann; (2) Ivanova acted with an intent to deceive or induce reliance by the buyers of the realty and inducing Mann to wait; (3) Ivanova caused a

justifiable reliance by the addressees of false representations, such the buyers of the realty and Mann; (4) Ivanova's acts resulted in damages caused to Mann.

69.    Before selling the first apartment in June of 2019, Ivanova must have made representations to buyers of the realty in Saint Raphaël, France, as though she was fully authorized to sell Maniv's property.   That representation was false; Ivanova did not obtain the required consent of Maniv's co-owner Mann.

70.    On information and belief, Ivanova's false statements were endorsed or approved by Cavallari, who handled the realty sale and misused her position as a notary.

71.    On or about June 19, 2019, as evidence and oral admissions show, Ivanova signed some documents selling the first apartment and acting for Mann, including signing for him without his consent.

72.    On information and belief, Cavallari, the notary, endorsed or approved Ivanova's false statements in writing and Ivanova's imitation of Mann's signature, without which that sale could not be consummated.   Cavallari's acts, on information and belief, were contrary to her fiduciary obligations and in violation of her duty as a notary to prevent fraudulent dispositions.

73.    Before July of 2022, Ivanova, again, made representations to the buyers of the realty in Saint Raphaël, France, as though she was fully authorized to sell Maniv's property, apartment B031/32.  That was also false; Ivanova did not obtain the consent of Maniv's co-owner, Mann, to sell the second apartment, unit B031/32, nor informed him of her intentions.

74.    On information and belief, Ivanova's false statements in 2022 were endorsed or approved by Cavallari, who, as it follows from Ivanova's admissions, handled the second sale.

75.     Moreover, the apartment that Ivanova and Cavallari had reportedly sold, B031/32, had been furnished with furniture, equipment, and utensils that Mann had purchased and delivered to that apartment over the years for a rough estimate of about $35,000.

76.     From the act of unauthorized sale without Mann's knowledge and an unspeakable act, it follows that Ivanova made misrepresentations to people currently unknown to Mann that she was allowed to handle the interior of that apartment, B031/32.  Such misrepresentations resulted in Ivanova's conversion of the furniture, equipment, and utensils purchased by Mann and any objects in the apartment for a total value of over $35,000.

77.     Furthermore, on information and belief, the parage spots, ##16 and 17, unused by Maniv's co-owners in the prime location, San Raphael's embankment, could have been plausibly used, over the years, for rent.  Mann has received no accounting to find that out.

78.     As a result of Ivanova's and Cavallari's misrepresentations of material nature on repeated occasions, in connection with the unlawful sale of two apartments, Mann suffered damages in excess of $1.2 million.

79.     Plaintiffs Anrion, as assignee of Mann's claims for damages, and Mann, are entitled to recover for fraud.  Maniv is an indispensable nominal defendant for that Count.

## COUNT II.  FRAUDULENT CONCEALMENT.

**(All Plaintiffs against Defendant Tatiana Ivanova and Nathalie Roicomte-Cavallari)**

80.     Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

81.     Ivanova and Cavallari both showed their intentional failure to disclose to Mann a material fact and the existence of a cause of action, despite being under a duty to make such a disclosure to Mann, who acted in reliance that the apartments' status was the same, and suffered a loss.

82.     Prior to the sale of the first apartment in June of 2019, Ivanova fraudulently concealed material information about an anticipated sale from Mann, the co-owner of Maniv. Apparently acting in concert with Cavallari, Ivanova concealed from the realty buyers in Saint Raphaël, France, as though Ivanova was fully authorized to sell Maniv's property herself.   That was false; Ivanova did not obtain the required consent of Maniv's co-owner Mann.

83.     As a notary involved in Maniv's affairs, Cavallari was under the duty to disclose to the buyers that Ivanova was not authorized, acting on her own, to execute the purchase and sale agreement on behalf of Maniv.  Cavallari knew that apartment B052, Maniv's asset, was not even mentioned in the purported promissory note attributed to Mann and that Mann never issued any power of attorney for any sale of Mann's realty.

84.     Based on information and belief, Ivanova's concealment from Mann was endorsed or approved by Cavallari, who handled the sale, as follows from Ivanova's admissions.  Cavallari's failure to inform Mann of the proposed sales and the actual sales amounted to fraudulent concealment.

85.     On or about June 19, 2019, as evidence and admissions show, Ivanova concealed from Mann that she signed some documents selling the first apartment, acting for Mann, including signing a purchase and sale agreement for him, all without his consent.

86.     On information and belief, Cavallari, the notary, endorsed or approved Ivanova's false statements in her writing of acknowledgment, without which the sale could not be consummated.  Cavallari's acts, on information and belief, invoking fraudulent concealment, were aggravated by her knowingly violating the duties as a notary to prevent fraudulent transactions.

87.     Likewise, before July of 2022, Ivanova engaged in fraudulent concealment from Mann when she made representations to buyers of the realty in Saint Raphaël, France, as though

she was fully authorized to sell Maniv's property.  That was false; Ivanova did not obtain the consent of Maniv's co-owner, Mann, to sell the second apartment, B031/32.

88.     On information and belief, Ivanova's false statements, anew in 2022, were endorsed or approved by Cavallari, who, as it follows from Ivanova's admissions, handled the sale.

89.     As a result of Ivanova's and Cavallari's fraudulent concealment, Mann suffered damages in excess of $1.2 million.

90.     Plaintiffs Anrion, as Mann's assignee for these claims, and Mann, are entitled to damages for fraudulent concealment stated against Ivanova and Cavallari.  Maniv is an indispensable nominal defendant for that Count.

**COUNT III.  Money had and received.**

**(All Plaintiffs against Defendant Tatiana Ivanova).**

91.     Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

92.     As cited above, in or about June of 2019, Ivanova, according to her oral admissions to Mann, received on her personal account about $1.2 million, resulting from her fraudulent sale of the first apartment, B052, owned by Maniv, in which Mann had a 50% stake.  Ivanova did that without informing Mann.

93.     As it turned out, in or about July of 2022, Cavallari handled the sale of the second apartment owned by Maniv, in which Mann had a 50% stake.  Likewise, Cavallari, acting in breach of the fiduciary duties before the 50% co-owner of Maniv, on information and belief, received another $1.2 million under her control at a bank.

94.     On information and belief, as a notary involved in that transaction, Cavallari currently controls those funds placed on some account.  Assuming that Cavallari controls $1.2 million, she is also subject to the equitable cause of action money had and received.

95.     The funds controlled by, or through, Cavallari should not be routed to Ivanova's personal account, as Ivanova did in June of 2019, but to Mann's personal account (or a trust account in the US.)

96.     Additionally, as a part of the relief, a purported executive compensation of Ivanova that she caused Mann to pay, $240,000 a year, or otherwise subsidies to Ivanova to support her expenses and lifestyle, should be equitably recalculated.

97.     No employment agreement existed with Ivanova; her services to Mann should be recalculated on a quantum meruit basis.

98.     Ivanova's fair work-related income for her work should be less than half of that. Ivanova should be liable to return the overpayment of at least $120,000 a year.  In the span of 13 years, from 2004 to 2018, Ivanova obtained, without an agreement, a total of, on information and belief, over $3 million, above quantum meruit.

99.     Plaintiffs are entitled to relief under the equitable theory of money had and belief, stated against defendants Ivanova and Cavallari.

### COUNT IV.  Unjust enrichment.
### (All Plaintiffs against Defendant Tatiana Ivanova).

100.     Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

101.     As cited above, in or about June of 2019, Ivanova received on her personal account about $1.2 million, resulting from her fraudulent sale of the first apartment owned by Maniv, in which Mann had a 50% stake, all without informing Mann.

102.     For example, since 1996, Mann provided payments to Maniv's managers and various needs to maintain the properties in France.    The total of those payments, over 25 years, made by Mann exceeded €400,000 (Euros).

103.    On her end, at least to Mann's knowledge, Ivanova did not make payments for Maniv's needs.  Ivanova should be held responsible for compensating half of those payments to Maniv's management with interest.  Mann should be entitled to review proof of Ivanova's payments in Maniv, if any, of which he has no information.

104.    As mentioned, Ivanova abused her access to Amazon's and other businesses' accounts associated with Mann.  Ivanova claimed a purported executive compensation without an employment agreement, reaching $240,000 a year.

105.    Ivanova's compensation should be recalculated in quantum meruit.  Short of Plaintiffs' access to the accounting materials currently controlled by Ivanova.  Ivanova's overpaid compensation in 13 years, which she received from Mann's assets, could have reached approximately $3,120,000 above quantum meruit.  Thereby, against the lack of education in the USA and no prior managerial experience with any other business, Ivanova got unjustly enriched, beyond quantum meruit, without justification or contractual basis.

106.    Plaintiffs are entitled to relief under the equitable theory of unjust enrichment, stated against defendant Ivanova.

### COUNT V.  Breach of Fiduciary Duties.

**(Plaintiff Andrei Mann against Defendants Tatiana Ivanova, Nathalie Roicomte-Cavallari)**

107.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

108.    While being the 50/50 stakeholder in Maniv, Mann had the veto power in managerial acts in the name of Maniv.  No contracts in the name of Maniv to dispose of the company's assets could not be executed without Mann's required signature.  As the second 50/50 stakeholder, Ivanova had fiduciary obligations before Mann not to engage in fraudulent acts in the name of Maniv, causing damages to Mann.

19

109.    In particular, Ivanova has had no right to unilaterally sign or approve documents in the name of Maniv, without Mann.  Ivanova grossly breached her fiduciary obligations in that regard, disposing of Maniv's assets without Mann's knowledge.

110.    On her end, Cavallari was in charge of Maniv's affairs as a notary.  Cavallari also had apparent fiduciary obligations before Mann not to engage in fraudulent acts depriving him of his material rights in Maniv.

111.    As mentioned above, on July 21, 2022, Mann's attorney wrote to Cavallari, asking for accounting.  Cavallari ignored that request, perpetuating concealment in anticipation of the consummation of the second apartment's sale.  While not responding to the concrete inquiry on behalf of Mann, Cavallari perpetuated her breach of fiduciary duties to Mann.

112.    Plaintiff Mann is entitled to relief under the present Count of breach of fiduciary duty stated against Defendants Ivanova and Cavallari.

### COUNT VI.  Breach of contract.

### (All Plaintiffs against Defendant Tatiana Ivanova).

113.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

114.    The Articles of Association of Maniv, entered before the lawful authorities in Saint Raphaël, France, previewed the 50/50 split of the material rights held by Mann and Ivanova.  The Articles of Association, signed by both Mann and Ivanova before a French notary in the City Hall, operated as a contract between them.

115.    One of the terms of that contract was the 50/50 co-ownership of the company, which created the veto power for each of its two founding members not to undertake the sale of Maniv's assets without the other's consent and signature.

116.    Ivanova breached that contract, binding on her, and fraudulently overcame the veto power held by Mann.  While breaching her fiduciary obligations arising from the Articles of Association, Ivanova failed to inform Mann of her unilateral intentions to sell both properties in France and to direct proceeds to her personal account.

117.    Ivanova's acts could be qualified as raiding Maniv's assets in violation of her contractual obligations under the 50/50 split of ownership.

118.    As mentioned above, after Ivanova moved to the United States in 1997, she repeatedly asked Mann to provide her financial assistance to settle in this country.  Mann complied and paid her a total of approximately $1,172,000 in financial assistance.

119.    That financial assistance was supposed to be repaid with interest, but Ivanova failed to repay those proceeds or use those for settlement of accounts, violating her obligations to Mann.

120.    All Plaintiffs are entitled to relief against Defendant Tatiana Ivanova for breach of contract.

### COUNT VII.  Conversion.
**(All Plaintiffs against Defendant Tatiana Ivanova)**

121.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

122.    As mentioned, in secrecy from Mann, Ivanova and Cavallari reportedly sold apartment B-32/31 in or about July of 2022.

123.    However, that unit, designated as Mann's apartment, contained top-quality furniture, equipment, kitchenware, and utensils, that Mann had been buying for over 20 years for at least $35,000.

124.    Ivanova knew that Mann's furniture, equipment, kitchenware, and utensils, worth over $35,000, were inside that apartment, B031/32.  However, Ivanova caused to confiscate those items from Mann.

125.    At this time, Mann is unaware of what Ivanova did with that furniture, equipment, kitchenware, and utensils, either selling the apartment as already furnished or causing the interior items to be taken and then sold or merely taken away for good.  In any event, Ivanova was responsible for that sale.  Ivanova presumptively authorized the confiscation of Mann's furniture, equipment, kitchenware, and utensils.

126.    All Plaintiffs are entitled to assert the claim based on conversion stated at this time against Ivanova.

**COUNT VIII.  Account stated.**

**(All Plaintiffs against Defendants Tatiana Ivanova and SCI Maniv).**

127.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

128.    The Articles of Association of Maniv, entered before the lawful authorities in Saint Raphaël, in France, previewed the 50/50 split of the material rights held by Mann and Ivanova. The Articles of Association, signed by both Mann and Ivanova, operated as a contract between them.  That included both members' veto power not to undertake the sale of Maniv's assets.

129.    Ivanova breached that term, binding on her, by fraudulent overcoming Mann's veto power.  While breaching her obligations, Ivanova failed to inform Mann of her unilateral intentions to sell both properties in France and to direct proceeds to her personal account.

130.    As mentioned above, after Ivanova moved to the United States in 1997, she repeatedly asked Mann to provide her financial assistance to settle in this country.  Mann complied

and paid her a total of approximately $1,173,000 in financial assistance that had to be repaid. Additionally, Mann was entitled to interest.

131.    As mentioned above, since 1996, Mann provided payments to Maniv's managers and various needs to maintain the properties in France, which was necessary to retain those.  On her end, Ivanova did not make payments for Maniv's needs.  The total of Mann's payments for Maniv's needs, over 25 years, exceeded €400,000.

132.    As mentioned above, as Amazon's manager, Ivanova arranged a purported executive compensation for herself, $240,000 a year, without any employment contract.  Thereby, Ivanova misused access to records and accounts.

133.    Since Amazon did not bring revenues, Mann's paying that income to Ivanova, well over the typical salary for such work, should be treated mostly as subsidies to Ivanova to support her expenses and lifestyle should be equitably recalculated as twice less.

134.    Ivanova should be liable to return the overpayment of, at a minimum, $120,000 a year, for 13 years, for a total of about $3,180,000, which Ivanova obtained without an employment contract.  Based on the labor market, a quantum meruit recalculation of Ivanova's services is warranted, in conformity with her education overseas and her lack of managerial experience.

135.    Ivanova and Cavallari should account for the furniture, equipment, kitchenware, and utensils Mann bought for apartment B031/32 for over $35,000, confiscating Mann's property. Additionally, Ivanova and Cavallari should disclose if Maniv's parking spaces #16 and #17 had generated rental income.

136.    All Plaintiffs are entitled to relief against Defendant Tatiana Ivanova on the legal theory of account stated.

        //

## COUNT IX.  Declaratory judgment

### (Plaintiff Andrei Mann against Defendant Tatiana Ivanova)

137.   Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

138.   As cited above, at certain other times, Ivanova invested in Mann's business projects.  On May 23, 2018, Mann purportedly signed a promissory note to Ivanova for $2.3 million without the assistance of his own attorney.

139.   That promissory note should be held invalid on its face because it was dated by the notary public in Massachusetts, acknowledging the promissory note transaction on April 23, 2018, a month earlier.

140.   Furthermore, Mann's passport shows that he was in Russia on April 23, 2018, and in Italy on May 23, 2018.  Mann's being in Moscow and Naples on those respective dates is supported by other evidence.  Under these circumstances, the Court should adjudge the purported promissory note as invalid, null and void, ab initio.

141.   In a simple prima facie review, the Court should conclude that a wrong date or a month, as here, a discrepancy of the commitment made the instrument invalid ab initio, as not in conformity with Mass. Gen. Laws, Chapter 222, e.g., Sec. 16 'Notarial Acts that Should not Be Performed, Prohibited Actions by Notary Public,' Sec. 20 'Lawfulness, Accuracy or Truthfulness of Document or Transition Involving Notarial Act, Effect of Documents not Containing Acknowledgement or Certification'; and Sec. 22, 'Justices of the Peach, Notaries Public and Commissioners.'

142.   Substantively, that promissory note was also erroneous and defective because Ivanova invested in Mann's business projects in which she often had a stake, not for Mann's personal benefit.  Accordingly, those obligations concerned the business entities to which Ivanova

contributed capital rather than paying Mann individually.  Ivanova is free to seek recovery from the business entities to which those investments, ultimately, were made.

143.    Plaintiff Mann seeks a declaratory judgment.  The Court should declare that the purported Promissory Note, dated May 23, 2018, and notarized by a notary public on another date, a month earlier, was invalid on its face.

144.    The Court should also adjudge that such a purported document, with prima facia backdating acknowledgment, was illegal ab initio.  It may not be used as evidence of any debt or obligation by Mann to Ivanova.

### COUNT X.  Civil Conspiracy.
### (All Plaintiffs against Defendants Tatiana Ivanova and Nathalie Roicomte-Cavallari)

145.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

146.    As the alleged facts, by no later than June of 2019, Ivanova and Cavallari entered an agreement and a civil conspiracy to defraud Mann.  The purpose of that civil conspiracy was to deprive Mann of his stake in Maniv and its assets.  Ivanova and Cavallari, who has been a notary, were aware that such acts violated Mann's material rights and were illegal.

147.    Namely, while being the 50/50 stakeholder in Maniv, Mann had the veto power in managerial acts in the name of Maniv.

148.    Ivanova and Cavallari knew that no contracts in the name of Maniv could be lawfully signed without Mann's signature.  As the second 50/50 stakeholder, Ivanova had the obligation before Mann not to engage in fraudulent acts in the name of Maniv and not raid its assets, as she did.

149.    As a part of Ivanova's acting in that conspiracy to raid Maniv's assets, she had no right to sign or approve documents in the name of Maniv disposing of its assets, to the detriment of Mann.

150.    On her end, Cavallari was in charge of Maniv's affairs as a notary.  Acting in a conspiracy with Ivanova, Cavallari violated the apparent obligation before Mann not to engage in fraudulent acts depriving him of his material rights in Maniv.  Cavallari's participation in the conspiracy with Ivanova allowed the latter to raid Maniv's assets.

151.    As mentioned above, on July 21, 2022, Mann's attorney wrote to Cavallari, asking for accounting.  Cavallari ignored that request, perpetuating the conspiracy in anticipation of the consummation of the second apartment's sale.  While having a chance to abandon the conspiracy but not responding to the concrete inquiry of Mann's attorney on July 21, 2022, Cavallari aggravated her role in the conspiracy.

152.    Plaintiff Mann is entitled to relief under the present Count of civil conspiracy against Defendants Ivanova and Cavallari.

### COUNT XI.  Injunctive Relief.
### (All Plaintiffs against All Defendants).

153.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

154.    According to Federal Rule of Civil Procedure 65 and other law, Plaintiffs seek relief of injunctive relief.  As the alleged facts show, Defendants have caused and threatened to cause: 1) irreparable harm; 2) whereas Plaintiffs a clear legal right; 3) whereas no adequate remedy at law exists at present; and 4) consideration of the public interest favors relief.

155.     Namely, as Ivanova admitted to Mann, she had made arrangements for the sale of the second apartment owned by Maniv, executed some documents for that sale, imitating Mann's signature, and had the property sold in or about July of 2022 for $1.2 million.

156.     As stated above, Cavallari, on information and belief, controls $1.2 million received for the sale of the second apartment owned by Maniv as of this time.  Unless the Court enjoined Ivanova and Cavallari, they will cause irreparable harm to Mann and Anrion.

157.     The Court should issue an Injunctive Order prohibiting Ivanova and Cavallari from undertaking any transaction with the $1.2 million currently held on some account in France, to which Maniv is entitled.

158.     As a part of relief under that Count, the Court should also order Ivanova and Cavallari to execute the wire transfer instructions to wire transfer the proceeds for the sale of the second department to Mann's personal account or a trust account of his attorney.

159.     Plaintiffs are entitled to injunctive relief against all Defendants, whereas Maniv is a nominal but indispensable defendant.

### COUNT XII.  Accounting.
### (All Plaintiffs against All Defendants).

160.     Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

161.     As the alleged facts show, both Ivanova and Cavallari failed to account before Mann for the affairs of Maniv in violation of their implied or direct obligations.

162.     Since 1996, Mann regularly provided payments to Maniv's managers and various needs to maintain the two properties.

163.    Mann is unaware if Ivanova made any payments for Maniv's needs.  The total of those payments, over 25 years, made by Mann exceeded 400,000 Euros.   If Ivanova made any payments for Maniv's maintenance, she should provide evidence after the fact.

164.    Accounting should be undertaken to offset those amounts against Ivanova's claims that Mann owed her money. That should apply to recalculating the purported executive compensation of $240,000 per year that Ivanova was taking from Mann for limited managerial services.

165.    As mentioned above, Ivanova had never been a business manager before and had no qualifications to serve as an executive.  Ivanova's salary claim, which was not documented by an employment agreement, was inflated.  Ivanova's compensation should be recalculated in quantum meruit.  The overpayment of Ivanova for her limited services was at least twice the amount her work justified.  At least half of that 'executive' compensation income should be recalculated as personal subsidies to Ivanova by Mann due to repayment back to Mann.

166.    In the latest instance, on July 21, 2022, Mann's attorney wrote to Cavallari demanding to provide accounting and documents concerning the sale of the first apartment in June 2018.  Cavallari failed or declined to respond and to account.

167.    As to Ivanova, in the latest instance, on or about August 1, 2022, Ivanova, confronted by Mann over the phone with a request to produce documents and to provide accounting, initially promised him to do so.  However, then Ivanova kept delaying the disclosure of documents or providing the accounting.

168.    On information and belief, Ivanova kept delaying disclosure of documents in the expectation of receiving about $1.2 million on her personal account from France, leaving Mann in a difficult position to assert his rights to that money.

169.    Ivanova and Cavallari should be ordered to account for the furniture, equipment, kitchenware, and utensils confiscated from Mann's apartment B031/32 and disclose if Maniv's garage spots, #16 and #17, had generated rental income.

170.    Plaintiffs are entitled to relief of accounting, stated against Ivanova, and Cavallari, whereas Maniv is a nominal but indispensable defendant.

## COUNT XIII.  Promissory Estoppel.

### (Plaintiff Andrei Mann against Defendant Tatiana Ivanova)

171.    Plaintiffs incorporate by reference Paragraphs 1 to 66, with the same force and effect, and further allege as follows.

172.    As stated above, in 1996, Ivanova proposed to Mann to form a company, under the laws of France, for the acquisition of two properties in Saint Raphaël.

173.    That company, set up for holding purposes and mutual benefit, was formed between Mann and Ivanova on June 14, 1996, under the name Maniv.

174.    The primary purpose of Maniv's existence holding titles to two apartments was to have the realty managed effectively, transparently, and straightforwardly.  Mann relied on the Articles of Association, under which he had veto power.

175.    The alleged facts show that by virtue of obtaining Mann's participation in the company, Maniv, 1) Ivanova made a promise clear and unambiguous in its terms; (2) caused reliance by Mann, the co-owner of Maniv; (3) Mann's reliance was both reasonable and foreseeable; and (4) Mann was injured as a result.

176.    Instead of complying with the Articles of Association, Ivanova raided Maniv's assets on two occasions, in June 2019 and July 2022, depriving Maniv of its assets and injuring Mann.  That included, unspeakably, even the confiscation of Mann's furniture, equipment,

kitchenware, and utensils, which Mann had been buying for over $35,000, his personal property for many years.

177.    Plaintiffs are entitled to relief based on promissory estoppel arising from the Articles of Association and otherwise, and stated against defendant Ivanova.

**WHEREFORE,**

Plaintiffs seek the following relief:

(a) Damages on all Counts except for Declaratory Relief and Injunctive Relief.

(b) Plaintiffs estimate a total of Ivanova's damages to Mann, assigned to Anrion, after reconciliation with Ivanova's investments, to exceed $4 million.

(c) As a part of Ivanova's debts and liability to Plaintiffs, the Court should adjudge that proceeds from the sale of apartment B031/32 should be paid to Anrion, to be credited towards Ivanova's debts and liability to Mann.

(d) Declaratory Relief of holding the purported promissory note attributed to Mann, void *ab initio*.

(e) Injunctive Relief, to prevent the wire transfer of $1.2 million to Defendant Ivanova's personal account, requiring Ivanova and Cavallari to transfer those proceeds to Plaintiff Mann's account or at his directive.

(f) Attorney fees and costs

(g) Any other relief that the Court will find just and proper.

**DEMAND FOR JURY TRIAL.**

Plaintiffs demand herewith a jury trial on all Counts so triable.

//

//

Dated: August 8, 2022

Respectfully submitted,

_____/George Lambert/
George Lambert, Esq.
DC bar #979327
1025 Connecticut Ave., #1000 NW
Washington, DC, 20036
Tel. (202) 640 1897, Fax (800) 952 1950
Email: LawDC10@gmail.com
Attorney for All Plaintiffs

## VERIFICATION

I verify herewith, on behalf of Anrion Corporation as its president, and on my behalf personally, that I am familiar with the facts alleged in the preceding Complaint and that the allegations stated therein are true and correct to the best of my knowledge, under the penalties of perjury under the laws of the United States, pursuant 28 US Code Section 1746.

Dated: August , 2022

_____      (Andrei Mann)
Andrei Mann