UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 22-11272-RGS

ANRION CORP. and ANDREI MANN

v.

TATIANA IVANOVA; NATHALIE ROICOMTE-CAVALLARI;
and SCI MANIV

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTION TO DISMISS

March 14, 2023

STEARNS, D.J.

Plaintiffs Anrion Corp. (Anrion) and its principal, Andrei Mann, brought this action against Tatiana Ivanova, a long-time business associate of Mann, objecting to the sale of two French properties held by an investment company jointly owned by Mann and Ivanova (SCI Maniv), allegedly without Mann's consent or knowledge.[1] Plaintiffs also assert claims against Ivanova arising from financial support (from 1997 to 2017) and business compensation (from 2004 to 2018) Mann provided over the years. Ivanova moves to dismiss all claims pursuant to Fed. R. Civ. P. 12(b)(6). For the following reasons, the court will allow the motion.

---

[1] They also assert claims against a French Notaire, Nathalie Roicomte-Cavallari, but plaintiffs did not effectuate service on Roicomte-Cavallari.

## BACKGROUND

The facts, viewed in the light most favorable to plaintiffs as the nonmoving parties, are drawn from the Verified Complaint and the documents it incorporates by reference. Mann and Ivanova are both Russian nationals living in the United States. Mann is a resident of New York; Anrion is based in Florida; and Ivanova is a resident of Massachusetts. Compl. (Dkt # 1) ¶¶ 1-3. Mann and Ivanova have been involved in various business ventures as collaborators and colleagues for more than twenty years. *Id.* ¶ 7.

Mann and Ivanova incorporated SCI Maniv, an investment company based in Saint-Raphaël, France, on June 14, 1996, with each owning a 50% stake. *Id.* ¶ 5. SCI Maniv purchased two apartment units (B052 and B031/32) in southern France for $1.5 million, a sum advanced in equal shares by Mann and Ivanova. *Id.* ¶¶ 13-14. Mann and Ivanova each took possession of a unit for personal use. *Id.* ¶ 16.

Over the course of their twenty-year relationship (from 1997 to 2017), Mann provided Ivanova and her family financial assistance amounting to roughly $1.2 million, including advances of $301,018 in 2016 and $13,325 in 2017. *Id.* ¶¶ 19-20. Additionally, Mann's Massachusetts company, Amazon Construction LLC (Amazon), hired Ivanova in a managerial position in December of 2004. *Id.* ¶¶ 23-24. Over the next fourteen years, Amazon paid

Ivanova a yearly salary of $240,000. *Id.* ¶ 26. The payments were made from Mann's personal account. *Id.* ¶ 32.

Ivanova, in turn, made a $2.3 million business loan to Mann. *Id.* ¶ 40. The loan was memorialized in a Promissory Note (Note) that Mann signed on June 26, 2012. Note (Dkt # 18-1 at 3-4). Six years later, on May 23, 2018, Mann agreed to amend the Note by executing an Authorization and Agency Agreement (Agreement) that recited a balance of $1.53 million in principal and interest still owed to Ivanova. Agreement (Dkt # 18-1 at 1-2). The Agreement: (1) granted Ivanova a power of attorney for the purpose of selling the French properties; (2) allowed the net proceeds from the sale of the properties to be applied towards the reduction of the amount due to Ivanova under the Note; and (3) conferred authority on Ivanova to control both the sale of the properties and the disbursement of the sale proceeds. *Id.*

Mann, for his part, disputes the validity of the Agreement. *See* Compl. ¶¶ 40-48. Mann contends that the Agreement is invalid, first because it was drafted by Ivanova's personal attorney without his participation. *Id.* ¶ 40. Second, Mann claims to have no recollection of ever signing the Agreement. *Id.* ¶ 41. Third, a notary dated the witnessing of his signature on April 23, 2018, while Mann is alleged to have signed the Agreement on May 23, 2018. *Id.* Fourth, Mann asserts he could not have signed the Agreement on either

date because he had travelled to Russia in April of 2018 and then from there to Italy in May.  *Id.* ¶ 41.  Finally, Mann claims that he detrimentally "over-relied on Ivanova without proper accounting or auditing of mutual payments and liabilities." *Id.* ¶ 43.

Relying on the disputed Agreement, Ivanova directed SCI Maniv to sell the two French properties.  Ivanova sold the first property in June of 2019 for over $1 million, and the second in July of 2022 for approximately $1.2 million.  *Id.* ¶¶ 50-55.  Roicomte-Cavallari assisted Ivanova in the sales, both of which occurred allegedly without Mann's knowledge or authorized signature.  *Id.* ¶¶ 51-54.  Mann claims that Ivanova deposited the sales proceeds in her personal bank account.  *Id.* ¶ 53.

## DISCUSSION

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Two basic principles guide the court's analysis.  "First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678. "Second, only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679.  A claim is facially

plausible if its factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

### a. Any claims premised on the sale of the French properties must be brought in France in accordance with the forum selection clause in SCI Maniv's Articles of Association.

As the court previously determined, the portion of plaintiffs' claims relating to the sale of the two French properties[2] should be governed by French law. Ivanova now asserts that the claims must further be adjudicated in a French court in accordance with the SCI Maniv Articles of Association,[3] which provide:

> Any disputes that may arise during the term of the company or its liquidation, either between the shareholders, the management or the company, or between the shareholders themselves, relating to company affairs, shall be subject to the jurisdiction of the District Court of the registered office.

Articles of Association (Dkt # 19-4) art. 40.

---

[2] This category includes claims seeking to recover the value of the alleged furnishings within Mann's apartment, maintenance payments, and the rent that could have been charged on the garage space.

[3] That the company dissolved in August of 2021 does not alter the court's analysis – the dispute still concerns Ivanova's sale of property owned by SCI Maniv, allegedly without the consent of Mann as an equal shareholder. To the extent Mann is concerned that there are "no assets in France subject to the present action," Defs.' Suppl. Mem. (Dkt # 22) at 1, Mann may seek to enforce any judgment of the French court in the United States in accordance with international law.

"Under federal law, the threshold question in interpreting a forum selection clause is whether the clause at issue is permissive or mandatory." *Rivera v. Centro Medico de Turabo, Inc.*, 575 F.3d 10, 17 (1st Cir. 2009). "Permissive forum selection clauses, often described as 'consent to jurisdiction' clauses, authorize jurisdiction and venue in a designated forum, but do not prohibit litigation elsewhere[.] . . . In contrast, mandatory forum selection clauses contain clear language indicating that jurisdiction and venue are appropriate exclusively in the designated forum." *Id.*, quoting 14D Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice and Procedure § 3803.1 (3d ed. 1998).

Here, there can be no reasonable dispute that the forum selection clause is mandatory. French law allows parties to a contract to agree in advance to a judicial forum, *see* C. Civ. [Civil Code] art. 42 (Fr.), and that is clearly what the parties meant to do here. They not only agree that disputes can be brought in the named court but also that they "shall be" submitted to that court. "[I]t is axiomatic that the word 'shall' has a mandatory connotation." *Claudio-De Leon v. Sistema Universitario Ana G. Mendez*, 775 F.3d 41, 46 (1st Cir. 2014).

"The next step in evaluating the applicability of a forum selection clause is ascertaining its scope." *Id.* at 47. As with the above, this step is not

6

subject to reasonable dispute. The clause extends to "[a]ny disputes . . . relating to company affairs," and the business of the company is managing the two French apartments.

"Having established that the forum selection clause is mandatory and its scope covers [plaintiffs'] claims, the final step in evaluating the clause involves asking 'whether there is some reason the presumption of enforceability should not apply.'" *Id.* at 48, quoting *Rafael Rodriguez Barril, Inc. v. Conbraco Indus., Inc.*, 619 F.3d 90, 93 (1st Cir. 2010). Courts have identified four grounds for finding a forum selection clause unenforceable:

> (1) the clause was the product of fraud or overreaching; (2) enforcement would be unreasonable and unjust; (3) proceedings in the contractual forum will be so gravely difficult and inconvenient that the party challenging the clause will for all practical purposes be deprived of his day in court; (4) enforcement would contravene a strong public policy of the forum in which suit is brought, whether declared by statute or by judicial decision.

*Rafael Rodriguez Barril, Inc.*, 619 F.3d at 93 (cleaned up).

None of the exceptions hold weight here. While there are allegations of fraud in this case, plaintiffs do not suggest that Ivanova engaged in fraud in drafting the Articles of Association, so the first does not apply. As to the second and fourth, the court sees nothing unjust or against Massachusetts public policy about requiring the parties to litigate their dispute about the legality of the sale of French property and their duties to each other as

7

shareholders of a French company in France. Nor does the court credit any allegations of inconvenience. Mann had no difficulty running a business and purchasing property in France. He should have no difficulty pursuing litigation in that forum.

### b. Plaintiffs lack standing to bring any equitable claims related to payment of Ivanova's salary under Massachusetts substantive law.

Although the employment-related claims against Ivanova arise under Massachusetts law, the court must dismiss these claims for lack of standing. Even assuming a claim in equity could exist to recoup salary paid to an employee (the court is not convinced that it does),[4] that claim must be brought by the employer. The Complaint establishes that Amazon – and not either plaintiff[5] – employed Ivanova, so plaintiffs have no basis to bring these claims in their own stead.

---

[4] It also appears most, if not all, of the claim would be time-barred under the applicable statute of limitations.

[5] The court acknowledges that the Complaint alleges that Mann funded Ivanova's paychecks from his personal accounts. But his payments were made on behalf of Amazon. At best, he has a claim against Amazon to recoup those funds paid from his personal account.

### c. Plaintiffs have failed to state a claim as to their remaining Massachusetts law claims.

To the extent plaintiffs seek repayment of various sums paid to Ivanova between 2010 and 2017, the Complaint fails to state a plausible claim for relief. Assuming a breach of contract theory, plaintiffs' claims are doomed by the failure to allege the existence of any contract (or even that, absent a written contract, Ivanova nonetheless manifested "mutual assent to" treating the payments as a loan). *I & R Mech., Inc. v. Hazelton Mfg. Co.*, 62 Mass. App. Ct. 452, 455 (2004). Assuming a quasi-contract theory, plaintiffs' claims are doomed by the failure to allege that Ivanova made any promise or representation that she would pay back the sums.[6]

To the extent plaintiffs seek declaratory judgment that the Agreement is void,[7] they offer no plausible basis for invalidating the contract. Plaintiffs do not dispute that Mann "borrow[ed]" money from Ivanova or that the signature on the Agreement is authentic.[8] Compl. ¶ 44. Instead, they argue

---

[6] The June 11, 2015 legal opinion hinders rather than helps Mann. It shows that the parties knew how to frame the lending of money as a loan (and knew the necessity of establishing an interest rate and complying with the Internal Revenue Code), making the absence with respect to the sums paid to Ivanova all the more glaring.

[7] Although plaintiffs now bafflingly appear to dispute the authenticity of the document itself, their own Complaint references it.

[8] That Mann "has no recollection of signing the document," *id.* ¶ 41,

9

invalidity based on notarization errors or alleged inaccuracies in the document.

The notarization errors appear to be two-fold: (1) the notary did not actually witness the signing because Mann was not in the United States at the time;[9] and (2) the notary dated his seal April 23, 2023, instead of May 23, 2023. But it is unclear why any alleged errors in the notarization would impact the validity of the contract. To the contrary, Massachusetts law provides that any "failure of a document to contain the forms of acknowledgment, jurat, signature witnessing or copy certification set forth in section 15 or otherwise to comply with the requirements set forth in sections 8 to 23, inclusive, shall not have any effect on the validity of the underlying document or the recording of the underlying document." *See* Mass. Gen. Laws ch. 222, § 20(b)(i).

The alleged inaccuracies are similarly two-fold: (1) the numbers reflected in the Agreement are "erroneous and defective," Compl. ¶ 47; and (2) the Agreement should not be with Mann personally because any money from Ivanova was intended for Mann's business entities. But plaintiffs offer

---

does not mean he disputes that he did sign it, nor does it preclude a finding to that effect.

[9] The court presumes this is the argument. It is unclear why Mann's travel outside of the United States would invalidate a contract.

no valid basis for looking beyond the four corners of the document – there is no suggestion, for instance, that Mann signed the document under duress or undue influence.[10]  Without some plausible justification to consider external evidence, Mann's post-signing disagreement with the numbers reflected in the document or the imposition of personal liability are not grounds for voiding a contract.

## ORDER

For the foregoing reasons, the motion to dismiss is ALLOWED, without prejudice to any further litigation between the parties in the courts of France.  The Clerk will close this case and retain the file should it be requested by the French courts.

SO ORDERED.

/s/ Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[10] Mann alleges that Ivanova's attorney drafted the Agreement and that he "over-relied" on her, *id.* ¶ 43, but not that he (an experienced businessman) was unable to understand the nature of what he was signing.